THE WOMAN'S CLUB OF ST. ALBANS,

*a corporation*

*v.*

ERNEST K. JAMES, *As Trustee*

*Under Item VIII Of The Will Of*

J. V. R. SKINNER, *Deceased, et al.*

(No. 13499)

Decided April 8, 1975.

*Campbell, Love, Woodroe & Kizer, W. M. Woodroe and David A. Faber* for appellant.

*James, Wise, Robinson & Magnuson, Robert E. Magnuson* for appellees.

SPROUSE, JUSTICE:

This is an appeal from the judgment of the Circuit Court of Kanawha County which dismissed the appellant's action to construe a will. The appellant, The Woman's Club of St. Albans, sought a judicial determination of whether property devised to the Club by the will could be sold or used commercially without losing the real estate. The defendants and appellees are Ernest K. James, Trustee of a trust created by the will, Mary Ellen Skinner Martin, Charles Wickham Skinner, Jr., Carrol Skinner Lawson; Charles A. Albert, Paul C. Soulsby, and John T. Keenan, Trustees of St. Mark's Episcopal Church. The action was brought pursuant to West Virginia Code, Chapter 41, Article 3, Section 7 which provides:

> "Notwithstanding any other provision of law, and notwithstanding there is no other ground of equity jurisdiction, courts possessing general equity powers shall have and take jurisdiction of a suit to construe an ambiguous will at the suit of the executor, or administrator with the will annexed, or of any beneficiary thereunder whose interests are affected by a construction of the ambiguous provision."

J. V. R. Skinner died on December 18, 1949. He devised a tract of real estate, designated as his "Home Place" to the plaintiff woman's club by this provision of his will:

> "(2) I give and devise unto The Woman's Club of St. Albans, a non-profit corporation of St. Albans, West Virginia, all of that part of my said Home Place described in this ITEM as Parcel No. 2, so long as it shall be used and maintained by said Club as the home or headquarters of the senior division of said Club and for the general purposes of the Club. In the event said Club shall be dissolved, or its corporate charter surrendered, or shall be operated for profit, or in the event the real estate herein devised shall cease to be used for civic, cultural and educational purposes within the City of St. Albans, then in any

of such events, this devise shall fail completely and the title to said Parcel No. 2 shall pass to and become a part of my Residuary Estate hereinafter disposed of in ITEM VIII. The remainder of my said Home Place in this ITEM described as Parcel No. 3 shall pass to and become a part of my Residuary Estate hereinafter disposed of in ITEM VIII."

In Item VIII of the will, the testator devised all the residue of this property, real, personal or mixed, to the defendant trustee with directions to convert the property to cash and distribute the proceeds, after the payment of his debts and costs of administration, to ten named beneficiaries, being nine individuals and St. Mark's Episcopal Church. Any share of a beneficiary predeceasing the testator was to become part of the residuary estate for distribution to the remaining devisees named in that part of the will. If no beneficiaries survived the testator, the residue passed to the Skinner heirs under the laws of descent and distribution.

The parcel devised consists of a dwelling and approximately three acres of land near the center of St. Albans, West Virginia. The plaintiff uses and maintains the dwelling as its headquarters and for the general purposes of the Club. The plaintiff now desires to use the property "for the production of cash revenues", but the complaint details no information as to how this is to be accomplished. The charter of the St. Albans Woman's Club, after stating the general purposes of the Club, provides:

"That the above objects may be the better and more perfectly realized, it shall be a purpose of this corporation to acquire and hold real estate of such nature and amount as shall be needed for the use of the said The Woman's Club of St. Albans, to erect buildings thereon, and for these purposes to borrow money and to encumber any real estate that may at the time belong to said corporation. Also to dispose of any such real estate when it shall be thought to be for the best interests of the said Club."

The plaintiff contends there are a number of questions of interpretation presented by the will which, under the statute, the trial court was required to answer. In summary, they are:

(1) Does the "in the event" clause quoted above create an executory devise (gift over) subject to the rule against perpetuities, or a condition subsequent * * * which is not subject to the rule against perpetuities;

(2) Whether any of the language in the first and second sentence of paragraph (2) would cause said property to be lost to the Woman's Club by defeasance or reverter if the land or part thereof is leased or used to produce revenues for Club purposes;

(3) Can the Woman's Club sell the land not needed for its home and headquarters to obtain funds for Club purposes, without a defeasance of the title; and

(4) In the event of a breach of the "in the event" clause, who is entitled to claim the property, James, Trustee, or Skinner's legal heirs.

The circuit court in dismissing the complaint ruled that the issue concerning a possible sale or a proposed way in which the real estate was to produce revenue (summarized in paragraphs (2) and (3) above) was not stated with sufficient particularity to support a definitive judgment. The court indicated that since no specific proposal for disposal of the real estate was presented, the action sought a construction to cover contingencies that might never arise. The trial court also ruled that the questions (summarized in paragraphs (1) and (4) above) relating to the "in the event" clause presented at most a question of legally interpreting the meaning of a devise. It ruled that such question did not constitute an ambiguity within the meaning of Code, 41-3-7.

There are two issues presented by this appeal. The first relates to the language devising an interest to others "in the event" the Woman's Club uses the real estate

in such a manner as to defeat their title. The question is whether this language is ambiguous so as to require construction under the terms of 41-3-7. The second issue relates to possible sale or commercial use of the real estate by the Woman's Club. The question is whether some present controversy or specific proposal must be present in order for the plaintiff to obtain a construction for this purpose under Code, 41-3-7.

The trial court ruled too broadly in holding that a legal interpretation of a devise did not constitute an ambiguity as contemplated by Code, 41-3-7. The cases decided under this statute have not interpreted the ambiguity provision so narrowly. *Smith v. Smith*, 134 W. Va. 842, 62 S.E.2d 347; *West v. West*, 116 W. Va. 378, 180 S.E. 433; *Brookover v. Grimm*, 114 W. Va. 701, 174 S.E. 567. In *Grimm*, the trial court was ordered to construe provisions of a will relating solely to a legal interpretation. *West* and *Smith* deal with legal interpretations or issues created by a combination of legal and factual issues. In determining whether an ambiguity exists as contemplated by Code, 41-3-7, it makes no difference whether the issues arise upon a pure question of law or upon the application of legal principles to the surrounding circumstances.

The trial court, therefore, should have determined whether the "in the event" clause of the devise to the plaintiff created an ambiguity affecting the plaintiff. Since, however, we find this language unambiguous as it relates to the plaintiff, it would be a waste of the judicial process to return it to the trial court for that finding. The question of whether there exists an ambiguity affecting the plaintiff presents a pure question of law which can be resolved without resort to the intent of the testator or similar interpretive criteria. It is not necessary to construe the meaning of the devise as it affects parties other than the plaintiff as those issues are not properly before us.

The key language of the Skinner will, which appellant contends requires interpretation to resolve the first is-

sue, devises the real estate to the Woman's Club "so long as it shall be used and maintained * * * as the home * * * in the event said Club shall be dissolved * * * or shall be operated for profit * * * or in the event the real estate * * * shall cease to be used for civic, cultural and educational purposes * * * and in any of such events this devise shall fail * * *", and "shall * * * become a part of my residuary estate * * *."

The appellant contends this language creates an ambiguity because there is a question of whether the "in the event" clause creates an executory interest which is subject to the rule against perpetuities or a fee simple subject to a condition subsequent which is free of that rule. It further contends that if the devise of the possible future interest is subject to the rule against perpetuities, it is void and there is a further ambiguity as to whom should receive the property should the Woman's Club breach the conditions.

The devise is clearly not a fee simple subject to a condition subsequent. Such an estate does not terminate automatically upon the occurrence of the stated event, but is subject to defeasance only by the exercise of a right of reentry or power of termination by the grantor or his heirs. 28 Am. Jur. 2d, *Estates*, Section 188, p. 328 28 Am. Jur. 2d, *Estates* Section 144, pages 259-60.

There remains, however, the possibility that the language could be interpreted as devising either a fee simple determinable or a fee simple determinable with an executory interest. The executory interest, of course, is subject to the rule against perpetuities. A fee simple determinable is created by any limitation which creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of the stated event. 28 Am. Jur. 2d, *Estates* Section 24, pages 101-02; 1 Simes, Future Interests, Section 282, pages 329-30. The potential residuum is a possibility of reverter in the grantor. Restatement of Property, Section 44, page 121. An intent to automatically terminate the estate upon the happening of the named event is usually manifested by a limitation which contains the terms

"until", "so long as", or "during", or which contains a provision that upon the happening of the event, the land is to revert to the conveyor. 1 Simes, Future Interests, Section 286, page 341; *Smith v. Smith, supra.* See also *Myers v. Town of Milton,* 148 W. Va. 789, 137 S.E.2d 441. It is obvious, then, that the "so long as" language of the devise in question would have created an uncomplicated fee simple determinable estate except for the "in the event" clause. Assuming the "in the event" language was not an attempt on the part of the testator to devise a possibility of reverter, the language might be interpreted as creating an executory interest. 1 Simes, Future Interests, Section 221, page 249.

This latter clause could possibly complicate the devise "in the event" the Woman's Club's title expires upon the limitation. The complication could not, however, affect the prior estate of the Woman's Club.

The authorities hold uniformly that where the testator uses express language to create a determinable fee with the clear intent that the estate is to be divested upon the happening of the named event, the prior estate will not be enlarged into a fee simple absolute because of the failure of a void executory interest. *First Universalist Society of North Adams v. Boland,* 155 Mass. 171, 29 N.E. 524; 2 Simes, Future Interests, Section 827, page 318. The failure of the void executory interest would leave the bare fee simple determinable with all of the attributes of that estate including the possibility of reverter. The possibility of reverter would be vested in the trustee or Skinner's heirs.

Several possibilities exist should the Woman's Club's title expires upon the limitation. Should the language in question be interpreted as a fee simple determinable, the trustee could receive a fee simple absolute. If it were determined to be a fee simple determinable with an executory interest, either the heirs or the trustee takes the estate. The Woman's Club could not take the enlarged estate under any of these circumstances. Any controversy arising from the testator's use of this lan-

guage would be between the residuary legatees and the heirs of the testator. The circuit court, therefore, although assigning an erroneous reason, correctly held there was no ambiguity in the Skinner will affecting the plaintiff. A party has no interest in the construction of a will when the party can be affected in no way by the construction. See *Haseltine v. Shepherd*, 99 Me. 495, 59 Atl. 1025. *Shepherd*, although holding that no present controversy was necessary for a court to entertain a suit to construe a will, held that a plaintiff must have an interest in having questions answered. The court in *Shepherd* said:

> "It should be said, however, that the court will not feel itself bound to answer all questions which can possibly be asked by a devisee. It must appear that the language of the will is such that the parties may reasonably have doubts concerning its true construction. Other parties should not be subjected to the trouble and expense of appearing in court, or the possible hazard of not appearing, in cases where there is no doubt. Again, the party asking the questions must have interest in having the questions answered." *Haseltine v. Shepherd, supra* at 504, 59 Atl. at 1029.

See also *Stribling v. Coal Co.*, 31 W. Va. 82, 5 S.E. 321; 96 C.J.S., *Wills*, Section 1085b, page 762; 5 Am. Jur. 2d, *Appeal and Error*, Section 706, page 152.

The trial court's ruling on the second issue was entirely correct. It held Code, 41-3-7, not to require construction of the provisions of the Skinner will relating to sale or commercial use because no specific proposal was presented and the need for resolution of those conflicts may never arise. The three principal cases relied upon by both appellant and appellees, interpreting this section, all deal with ambiguities arising under a will in which there was some necessity for an immediate resolution of the problems asserted. *Smith v. Smith, supra; West v. West, supra; Brookover v. Grimm, supra.* In *Grimm*, there were adverse claimants to a sum of money held in the estate of a beneficiary under the will. In *West*, the

suit was "entertained for a correct distribution under the will of property remaining after assignment of dower and statutory interest in property." In *Smith*, there was the immediate question of whether the widow received an absolute estate or was merely entitled to expend income or income and corpus as might be reasonably necessary for her maintenance. See *O'Rourke v. Cleary*, 104 Vt. 312, 158 Atl. 673; *Harris v. Harris*, 79 Vt. 22, 64 Atl. 75.

Although there was a split of authority, the majority view in early American jurisprudence was that equity had no jurisdiction to construe a provision of a will unless incident to general equitable jurisdiction. The reason, of course, was that other questions were legal, not equitable. 4 Pomeroy, Equity Jurisprudence, Sections 1155-1157, pages 461-65. This was also the rule in West Virginia. *Buskirk v. Ragland*, 65 W. Va. 749, 65 S.E. 101. Courts not only required independent equitable grounds, but would not entertain will construction actions upon matters which were future, contingent, and uncertain. 4 Pomeroy, Equity Jurisprudence, Section 1157a, page 466. Later, under declaratory judgment statutes, courts exercised the right to construe wills regardless of an independent ground of equity. 4 Pomeroy, Equity Jurisprudence, Section 1157c, page 469; Annot., 12 A.L.R. 78. The Uniform Declaratory Judgment Act specifically so provides. *Wachovia Bank & Trust Co. v. Lambeth*, 213 N.C. 576, 197 S.E. 179; Uniform Declaratory Judgment Act, Section 4; Code, 1931, 55-13-2, as amended. An action under the Uniform Declaratory Judgment Act, of course, must involve a justiciable controversy. 22 Am. Jur. 2d, *Declaratory Judgments* Section 10.

Declaratory judgment acts, of course, generally authorize suits to construe wills, deeds, contracts, and other matters. Even before these acts were passed, a few states enacted laws dealing solely with the jurisdiction of courts of equity to construe wills. See Me. Code Ann., Title 14, Section 6051; Vt. Code Ann., Title 14, Section 117; N.Y.C.C.P., Section 2624, (1906); Ga. Code Ann., Sections 37-403 and 37-404. The West Virginia Legislature

by Code, 41-3-7, enacted such provision in 1931, ten years prior to the enactment of the Uniform Declaratory Judgment Act. It has been held that a subsequently enacted Declaratory Judgment Act does not repeal a will construction statute, but they exist concurrently. *O'Rourke v. Cleary, supra.* It is apparent from a review of the cases that most jurisdictions have resorted to one or both types of statutes to alleviate the harshness of the early equity rule. While not requiring the same prerequisites to maintain an action to construe a will, both types of statutes have been interpreted to achieve the same broad purposes. They permit construction of an ambiguous will where an existing controversy is a basis of the action. See for example, 13 Ala. L. Rev. 262. While courts have not read into statutes, such as W. Va. Code, 41-3-7, the same formal requirements of a justiciable controversy necessary in declaratory judgment actions, some present controversy or present necessity for construction has been required. The New York Court of Appeals, in interpreting a statute similar to Code, 41-3-7, held that a surrogate court had discretion to refuse to decide questions which may never be presented by actual conditions or occurrences, i.e., whether there was "a practical or present controversy" to be determined. *In re Mount's Will*, 185 N.Y. 162, 77 N.E. 999.

In *Moore v. Emery*, 137 Me. 259, 273, 18 A.2d 781, 788, the court, in interpreting a similar statute, said:

> "In the first place it is argued that the statute giving to the court the power to construe wills should be given a liberal interpretation. Conceding this to be ture, it does not justify this court in ignoring well settled principles established by courts generally and particularly by our own court. * * * In each of the Maine cases cited, * * * the problem was one of immediate concern to the parties before the court.

> "* * * But this Court is not called on to decide in advance every future question which may arise under a will merely because to do so may be helpful to a beneficiary or other interested

party in determining a present course of conduct. This is the province of counsel. * * *"

See *O'Rourke v. Cleary, supra; Clark v. Peck*, 79 Vt. 275, 65 Atl. 14.

The Legislature by enacting Code, 41-3-7, changed the common-law rule prohibiting suits to construe a will unless the construction was ancillary to an independent equitable ground. *Brookover v. Grimm, supra.* The Legislature expressed no intent, however, that courts would be required to give purely advisory opinions or abstract interpretations of wills. A present necessity or controversy must still underlie a suit to construe a will under 41-3-7.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*